---



**SO ORDERED,**

**Judge Selene D. Maddox**

**United States Bankruptcy Judge**

**The Order of the Court is set forth below. The case docket reflects the date entered.**

---

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **IN RE: JODIE FELTON** | **CASE NO.: 18-11797-SDM** |
| **DEBTOR** | **CHAPTER 13** |

| | |
|---|---|
| **JODIE FELTON** | **PLAINTIFF** |
| **v.** | **ADV. PRO. NO.: 25-01001-SDM** |
| **USDA-RURAL HOUSING SERVICE** | **DEFENDANT** |

### MEMORANDUM OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR DAMAGES, SANCTIONS, AND ATTORNEY'S FEES

This matter is before the Court on the *Motion for Damages, Sanctions, and Attorney's Fees* (the "Motion") (Dkt. #13), filed by Debtor and Plaintiff Jodie Felton ("Felton"). Felton seeks damages, sanctions, and attorney's fees based on the USDA–Rural Housing Service's (the "USDA") failure to timely release its mortgage lien after the entry of this Court's Agreed Order declaring the debt satisfied (the "Agreed Order"), and after the entry of the Discharge Order in her underlying bankruptcy case. In the Motion and supporting briefs (Dkt. #'s 13, 30, 31), Felton argues that the USDA's conduct violates this Court's orders and the discharge injunction,

constitutes civil contempt, and, under 11 U.S.C. § 106,[1] permits recovery of compensatory, statutory, and coercive damages under the Bankruptcy Code, the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p, (the "FDCPA"), and Mississippi Code Annotated § 89-5-21.

In its Answer and briefs (Dkt. #'s 21, 29, 32), the USDA concedes it failed to release its lien in a timely manner but contends that sovereign immunity sharply limits Felton's available remedies. According to the USDA, Congress has waived immunity only for reasonable compensatory damages and attorney's fees, and Felton's requests for punitive sanctions and damages under the FDCPA and Mississippi law are barred as a matter of law. At the September 5, 2025 status hearing, the parties agreed that the material facts were undisputed and that no discovery was necessary, leaving the case to be resolved on legal grounds. Felton also confirmed she was not seeking emotional distress or credit-related damages. The USDA acknowledged potential liability for reasonable fees and costs but maintained that § 106 and principles of sovereign immunity foreclose all remaining claims or damages. Following the hearing, the Court entered an Order Setting Briefing Deadlines (Dkt. #27), directing supplemental briefing on sovereign immunity and the scope of recoverable relief.

The parties submitted their briefs in accordance with that order, and the Court took the matter under advisement. Having considered the Motion, the submissions, and counsels' arguments, the Court concludes that the USDA is in civil contempt for violating this Court's orders and the discharge injunction. But sovereign immunity limits Felton's recovery to reasonable attorney's fees and costs incurred to secure the USDA's compliance with the Agreed Order and the Discharge Order. All other requested relief is denied for the reasons explained below.

---

[1] All statutory references will be to Title 11 of the United States Code unless indicated otherwise.

## I. JURISDICTION

The Court has subject matter jurisdiction under 28 U.S.C. §§ 1334(a) and 157(a) and the

Standing Order of Reference entered by Chief Judge L.T. Senter on August 6, 1984. This matter is

a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O), as it concerns the administration of the

estate and the debtor–creditor relationship, including the enforcement of this Court's orders and

the discharge injunction.

## II. BACKGROUND

The relevant facts are undisputed. Felton owns her primary residence at 923 Parkview

Street in Cleveland, Mississippi. In 1989, she executed two promissory notes and a deed of trust

in favor of the USDA to secure a $40,000 loan used to purchase the property. The deed of trust

was recorded in the land records of Bolivar County, Mississippi. On May 8, 2018, Felton filed a

voluntary petition under Chapter 13 of the Bankruptcy Code. BK Dkt. #1.[2] The Court confirmed

her Chapter 13 Plan on August 14, 2018 (BK Dkt. #20) and later approved a modification

providing for full satisfaction of the USDA's mortgage debt. BK Dkt. #24. On October 6, 2023,

the Court entered an Agreed Order declaring the USDA's lien fully satisfied and directing the

USDA to release the lien in accordance with applicable non-bankruptcy law. BK Dkt. #45. The

Court entered Felton's discharge on November 14, 2023, after which the case was closed. BK Dkt.

#'s 47, 50.

---

[2] As used in this opinion, "BK Dkt. #__" refers to the relevant docket entries in Felton's underlying bankruptcy proceeding, Case No. 18-11797. "Dkt. #___" refers to the relevant docket entries in this adversary proceeding.

The USDA did not timely release the lien as the Agreed Order required.[3] On March 21, 2024, Felton notified her attorney that no release had been filed. After confirming that the Bolivar County land records contained no Deed of Release, Felton's counsel emailed the USDA's counsel that same day to request an update on compliance. On May 23, 2024, Felton again contacted her attorney, this time after receiving an email from the USDA asserting an unpaid balance of $4,364.85 on her account. Although the contents and purpose of that email are unclear from the record, Felton's counsel contacted the Chapter 13 Trustee's office to verify whether any balance remained. On May 28, 2024, the Trustee confirmed that no $4,364.85 balance remained on the USDA's claim. The next day, Felton's counsel again emailed the USDA's counsel, attaching the Agreed Order and requesting the executed lien release.

Before late June 2024, the USDA referred Felton's account (still reflecting the erroneous balance) to the U.S. Department of the Treasury (the "Treasury") for collection. As a result, Felton received a letter from the Treasury in late June advising that garnishment of her Social Security benefits would begin on August 1, 2024. Felton's counsel contacted the USDA's counsel to stop the garnishment, and counsel confirmed that no garnishment would occur. The parties agree that no funds were withheld. However, the record does not clearly reflect when, or whether, the USDA corrected Felton's account to show a zero balance. On September 25, 2024, Felton's counsel again emailed USDA's counsel, attaching the Agreed Order and asking when the USDA intended to comply with its obligation to release the lien.

---

[3] The timeline summarized in the following paragraphs is drawn from the parties' pleadings and briefs, along with Felton's Fee Itemization (Dkt. #33) and the USDA's Objection (Dkt. #34). As noted previously, the parties agree that no material facts are in dispute and that discovery was unnecessary, leaving the Court with limited factual detail regarding their interactions. Although the USDA challenges the amount of fees requested, it does not dispute the factual statements contained in the time entries. Thus, the Court relies on those undisputed entries, together with the parties' filings, to describe the relevant sequence of events.

After months of unsuccessful informal efforts to secure the USDA's compliance with the Agreed Order and the discharge order, Felton's counsel sent a formal demand letter requesting that the USDA execute and file a lien release. The letter enclosed a proposed Deed of Release and a copy of the Agreed Order. In response, the USDA's Jackson, Mississippi office telephoned counsel and advised that its St. Louis, Missouri office would instruct the Batesville, Mississippi office to release the lien. Despite these communications, the lien still appeared of record in Bolivar County when Felton filed a Motion to Reopen Case on December 4, 2024. BK Dkt. #52. The Court reopened Felton's bankruptcy case on January 2, 2025. The next day, Felton filed her Adversary Complaint (Dkt. #1) asserting three claims for relief: (1) civil contempt, (2) violation of the FDCPA (15 U.S.C. §§ 1692e and 1692f specifically), and (3) violation of Mississippi Code § 89-5-21. Based on those theories, Felton seeks: (1) $1,000 in statutory damages under the FDCPA; (2) $200 in statutory damages and $131,472 in "mortgage money" under Mississippi Code § 89-5-21; (3) actual damages; (4) attorney's fees and costs, including the $350 reopening fee; (5) sanctions for the USDA's conduct; (6) daily sanctions until the deed of trust is released; and (7) pre- and post-judgment interest.

The USDA informed Felton's counsel that it executed a full release of the deed of trust in March 2025. Counsel received the executed release and recorded it in the Bolivar County land records on April 14, 2025. The USDA also represented that it initiated credit-reporting corrections to reflect that Felton's mortgage was paid in full as of her discharge date. The record does not establish whether the USDA ever reported a default on Felton's account. Felton, however, expressly disclaims any credit-related damages.

On April 21, 2025, the Court entered an *Agreed Order Staying Case* (Dkt. #11), staying this adversary proceeding for 60 days to allow the parties to pursue a negotiated resolution. When

the parties were unable to resolve the dispute, Felton filed the present Motion on July 31, 2025.

On August 4, 2025, the Court entered an *Order Granting Motion to Set Hearing for Damages, Sanctions, and Attorney's Fees* (Dkt. #15) and set a status hearing for September 5, 2025. On August 11, 2025, the USDA filed its *Answer to the Complaint* (Dkt. #21), admitting most of Felton's factual allegations. The USDA denies, however, that its conduct was willful or that it violated the FDCPA or Mississippi law. The USDA also asserts that sovereign immunity limits Felton's recovery to actual compensatory damages and reasonable attorney's fees, and that her claims for statutory penalties, punitive sanctions, and "mortgage money" under the FDCPA and Mississippi Code § 89-5-21 are barred as a matter of law.

At the September 5, 2025 status hearing, the parties confirmed that the material facts were undisputed and that no discovery was necessary, leaving only legal issues for the Court to resolve. Felton's counsel stated that she was not seeking emotional distress or credit-related damages. The USDA's counsel acknowledged potential liability for attorney's fees and compensatory damages but argued that sovereign immunity bars any punitive or sanction-based relief under § 106. Felton's counsel further conceded that she suffered no actual damages from the USDA's noncompliance and sought only sanctions, attorney's fees, and statutory damages under the FDCPA and Mississippi Code § 89-5-21. The Court ordered supplemental briefing on sovereign immunity and a fee itemization from Felton, setting deadlines of October 6 and October 16, 2025. See *Order Setting Briefing Deadlines*, Dkt. #27.

On October 6, 2025, the USDA filed its *Brief Opposing Plaintiff's Motion for Damages, Sanctions, and Attorney's Fees*. Dkt. #29. The USDA again admitted its failure to release the lien in a timely manner but argued that Felton is entitled only to reasonable costs and attorney's fees. Relying on *In re Reed*, 616 B.R. 77 (N.D. Miss. 2020), the USDA asserted that § 106(a) waives

sovereign immunity solely for compensatory relief and expressly prohibits punitive or deterrent

monetary sanctions against the United States.[4] It also cited *In re Duby*, 451 B.R. 664 (B.A.P. 1st

Cir. 2011) to argue that any monetary award must align with the limitations of the Equal Access to

Justice Act (the "EAJA") (28 U.S.C. § 2412(d)(2)(A) specifically). The USDA emphasized that

Felton concedes she suffered no actual damages apart from the costs and attorney's fees incurred

to secure the USDA's compliance with this Court's Orders, and that the USDA's contempt was

purged when the lien release was recorded in April 2025. Accordingly, the USDA contends that

Felton may recover only the reasonable costs and attorney's fees incurred up to April 14, 2025—

the date the Deed of Release was recorded.

Felton filed her *Brief in Support of the Motion for Damages, Sanctions, and Attorney's Fees*

(Dkt. #30) the same day the USDA filed its opposition. She argues that sovereign immunity does

not bar her claims because § 106(b) governs this case. According to Felton, the USDA waived

immunity by filing a proof of claim, thereby permitting all "related counterclaims," including the

full scope of damages she seeks. Her brief, however, offers little authority beyond the statutory

text to support the breadth of the waiver she proposes.

In her *Response Brief* (Dkt. #31), Felton reiterates these arguments. She contends the

USDA's authorities are inapplicable because they interpret § 106(a), not § 106(b). Felton asserts

that the only relevant authority, i.e., *In re Vaca Brava Old San Juan, LLC*, 560 B.R. 376 (Bankr.

D.P.R. 2016), supports her position that the filing of a proof of claim constitutes a waiver broad

---

[4] The USDA also relies on decisions such as *In re Vaca Brava Old San Juan, LLC*, 560 B.R. 376 (Bankr. D.P.R. 2016); *In re Matthews*, 184 B.R. 594 (S.D. Ala. 1995); and *In re Skulky*, 182 B.R. 706 (Bankr. E.D. Pa. 1995), each holding that punitive or deterrent damages are unavailable against the federal government even when the underlying Bankruptcy Code provision authorizes such remedies.

enough to allow her asserted counterclaims. Her reply cites no additional authority beyond *Old San Juan* but maintains that § 106(b) authorizes the full range of relief she requests.

In its Reply (Dkt. #32), the USDA argues that Felton's distinction between §§ 106(a) and 106(b) is misplaced because both subsections operate as limited jurisdictional waivers and neither creates substantive liability. The USDA asserts that § 106(a)(3) applies to both subsections and prohibits punitive damages while requiring consistency with the EAJA. The USDA also notes that Felton rejected its $5,000 settlement offer without a counterproposal and that she has identified no legal or factual basis for a broader award. Reiterating that the matter is fundamentally a contempt proceeding, the USDA argues that fees incurred after its compliance in April 2025 are unreasonable and that Felton has demonstrated no actual compensable harm. It therefore maintains that any recovery must be limited to actual costs and reasonable attorney's fees, subject to EAJA limitations for any award above the amount it offered.

Felton submitted her fee itemization on October 16, 2025 (Dkt. #33), seeking $8,019.50 for 31.1 hours billed at $265 per hour. The itemization covers work performed from March 2024 through October 2025, including 21.9 hours incurred during the USDA's period of noncompliance. The USDA objected (Dkt. #34), arguing that fees incurred after April 14, 2025, the date the lien release was recorded, were excessive because its contempt had been purged. The USDA also asserts that several billing entries were duplicative or unrelated to obtaining compliance. Based on its proposed adjustments, the USDA contends that only 16.7 hours are compensable, resulting in an award of $4,825.78, consistent with its previous settlement offer. The USDA further challenged

counsel's hourly rate, arguing that the EAJA caps apply ($250.32 for 2024 and $254.81 for 2025), although it stated it would not press the rate issue if the Court limits the award to $4,825.78.[5]

## III. DISCUSSION

With the facts established and the parties' positions fully briefed, the Court turns to the legal questions presented. The dispute centers on the scope of sovereign immunity and its application under § 106. The Court, therefore, will begin by outlining the governing principles of sovereign immunity in the bankruptcy context. Next, the Court will consider whether sovereign immunity limits Felton's ability to recover under the Bankruptcy Code for the USDA's failure to comply with this Court's orders. Finally, the Court will address the effect of sovereign immunity on Felton's remaining claims under the FDCPA and Mississippi Code § 89-5-21.

### A. Sovereign Immunity and 11 U.S.C. § 106

Before turning to § 106, the Court begins with the basic principles of sovereign immunity. The federal government and its agencies are immune from suit unless Congress has expressly authorized the action. *Hercules, Inc. v. United States*, 516 U.S. 417, 423 (1996). Sovereign immunity is jurisdictional in nature; without a clear and unequivocal waiver, federal courts lack authority to adjudicate claims against the United States. *United States v. Miller*, 604 U.S. 518, 527 (2025). A waiver of sovereign immunity confers only jurisdiction, and it does not create substantive rights or expand the government's liability. *Id.* (citing *United States v. Mitchell*, 436 U.S. 206, 212 (1983)). Any waiver must be unambiguously expressed and is strictly construed in

---

[5] The USDA also filed an Amended Objection to Plaintiff's Invoice for Time and Expenses (Dkt. #35) on November 25, 2025. The amended filing does not alter the USDA's substantive position; instead, it refines its calculations regarding compensable hours and adds detailed EAJA-based rate computations in support of its argument that Felton's counsel's hourly rate should be reduced.

favor of the sovereign. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 34–35 (1992); see also *In re Supreme Beef Processors, Inc.*, 468 F.3d 248, 252–53 (5th Cir. 2006).[6]

Section 106 of the Bankruptcy Code abrogates sovereign immunity only in defined circumstances. Felton contends that § 106(b) governs and authorizes the broad relief she seeks. The USDA responds that §§ 106(a) and 106(b) are purely jurisdictional provisions that permit a court to hear certain claims but do not create substantive rights or expand the government's liability. The Court agrees. Both subsections operate as limited jurisdictional waivers; neither supplies a cause of action. Felton's first claim for civil contempt based on violations of § 105 and § 524 is tied to Bankruptcy Code provisions expressly listed in § 106(a). Accordingly, § 106(a) governs the scope of the USDA's sovereign immunity and limits the relief available for her bankruptcy-based contempt claim. Felton's remaining claims under the FDCPA and Mississippi Code § 89-5-21 arise under non-bankruptcy statutes not enumerated in § 106(a). Those claims may proceed only if § 106(b) provides a jurisdictional waiver and, critically, only if the underlying statutes themselves create a substantive cause of action that may be asserted against the United States.

Section 106, as amended, reflects Congress's response to Supreme Court precedent requiring a clear and unequivocal statement before sovereign immunity may be overridden.[7]

---

[6] Although Congress later abrogated *Nordic Vill.* through the 1994 amendments to § 106, the decision remains instructive regarding the strict construction of sovereign immunity and the limits of judicial authority in the absence of an explicit waiver. See William L. Norton, III, 1 NORTON BANKRUPTCY LAW & PRACTICE 3d § 14:1 (2025).

[7] Before the Bankruptcy Reform Act of 1994, § 106 consisted of provisions substantially equivalent to the current subsections (b) and (c), addressing waivers of sovereign immunity for compulsory counterclaims and permissive counterclaims asserted as setoffs. 2 COLLIER ON BANKRUPTCY ¶ 106.01 (16th ed. 2025). The 1994 amendments added subsection (a) to make explicit Congresses intent to abrogate sovereign immunity as to governmental units for monetary, declaratory, and injunctive relief under specified provisions of the Bankruptcy Code. *Id.* Current

*Supreme Beef*, 468 F.3d at 254; *Nordic Vill.*, 503 U.S. at 34–35. Section 106(a)(1) abrogates sovereign immunity for claims arising under 59 enumerated provisions of the Bankruptcy Code, including §§ 105 and 524. See 11 U.S.C. § 106(a)(1) ("Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit . . . with respect to the following: (1) Sections 105 . . . 524 . . . ."). But § 106(a)(5) makes explicit that this abrogation is jurisdictional: it authorizes a court to hear the claim, but it does not create substantive rights or expand the government's liability. Thus, even when sovereign immunity has been waived, a claimant must still identify a substantive cause of action that affords relief against the sovereign. *Miller*, 604 U.S. at 527–28.

Although Felton does not expressly plead a violation of § 524(a), her allegations that the USDA failed to release its lien and failed to comply with the discharge order effectively assert such a violation. Courts, including the Fifth Circuit, recognize § 105(a) as the source of a bankruptcy court's authority to enforce its orders through civil contempt. *Matter of Hipp, Inc.*, 895 F.2d 1503, 1515 (5th Cir. 1990); *In re Cleveland Imaging & Surgical Hosp., LLC*, 26 F.4th 285, 294 (5th Cir. 2022). Because the Bankruptcy Code provides no independent damages remedy for violations of the discharge injunction, courts routinely rely on their civil contempt powers under § 105(a) to enforce § 524(a)(2). *Taggart v. Lorenzen*, 587 U.S. 554, 558 (2019).

Section 105(a) authorizes a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Code]." 11 U.S.C. § 105(a). This authority empowers courts to enforce their orders through civil contempt and to award compensatory relief for injuries caused by a party's noncompliance. *In re Highland Cap. Mgmt.*,

---

subsection (b), formerly subsection (a), has remained largely unchanged in substance, except Congress's clarification that the government must have filed a "proof of claim." *Id*. at 106.05.

*L.P.*, 98 F.4th 170, 174-75 (5th Cir. 2024). Section 105(a) therefore supplies the remedial mechanism for addressing violations of § 524(a) and the Court's own orders; § 106(a) operates in parallel by abrogating sovereign immunity for actions arising under those Code provisions. In other words, the Court's contempt authority derives from § 105(a), not § 106(a), and exercising that authority does not run afoul of § 106(a)(5)'s instruction that § 106(a) itself creates no substantive rights. Because Felton's contempt claim arises under statutory provisions expressly listed in § 106(a), namely §§ 105 and 524, § 106(a) governs the extent of the USDA's sovereign immunity and, in turn, limits the relief available for the alleged contempt.

Consistent with § 106(a), subsections (b) and (c) extend a bankruptcy court's jurisdiction to hear certain non-bankruptcy counterclaims and offset requests, but they do not supply the substantive law governing those claims. *Supreme Beef.*, 468 F.3d at 254; see also *In re Vaca Brava Old San Juan, LLC*, 560 B.R. 376, 384–85 (Bankr. D. P.R. 2016) (holding that § 106(b) is jurisdictional and does not create substantive rights or expand governmental liability beyond independent non-bankruptcy waivers). The Supreme Court has described § 106(b) as a limited waiver permitting compulsory counterclaims to a governmental proof of claim, and § 106(c) as permitting certain permissive counterclaims asserted solely for setoff. *Nordic Vill.*, 503 U.S. at 34.[8] Critically, *Nordic Village* emphasized that Congress may confer jurisdiction, but jurisdiction does not itself establish liability.

---

[8] See 1 NORTON BANKRUPTCY LAW & PRACTICE 3d § 14:10 (2025). ("[§ 106(b)] now [] comes into play as against the United States or one of its agencies only if the cause of action is not bankruptcy based."); and 2 COLLIER ON BANKRUPTCY ¶ 106.05[2] (16th ed. 2025) ("[I]t is frequently the case that § 106(b) need not be invoked to bring a bankruptcy proceeding against a governmental entity because § 106(a) abrogates sovereign immunity with respect to 59 enumerated Code sections.")

Although Felton relies on § 106(b) rather than § 106(c), as in *Supreme Beef*, the Fifth Circuit's analysis applies equally here. In *Supreme Beef*, the court held that § 106 does not create substantive rights against the United States and does not override the substantive limitations found in other federal statutes, such as the Federal Tort Claims Act. 468 F.3d at 256–58. The Fifth Circuit made clear that neither § 106(b) nor § 106(c) displaces the requirement that any underlying claim be independently viable under non-bankruptcy law. A claim that is legally nonexistent outside of bankruptcy cannot be transformed into a compensable counterclaim merely because the government filed a proof of claim. *Id.* at 259–60. Thus, § 106's waivers, whether under subsection (a), (b), or (c), are procedural: they allow a court to hear a claim but do not enlarge the substantive liability of the United States.

Other courts have emphasized the same principle: a waiver of sovereign immunity does not, by itself, create a right to recover damages from a governmental agency. *Cicippio-Puleo v. Islamic Republic of Iran*, 353 F.3d 1024, 1033 (D.C. Cir. 2004) (citing *FDIC v. Meyer*, 510 U.S. 471, 483–84 (1994)). The analysis requires two distinct inquiries. First, whether sovereign immunity has been waived, and second, whether the substantive law invoked actually provides a viable cause of action. *Meyer*, 510 U.S. at 484; see also *U.S. Postal Serv. v. Flamingo Indus. (USA) Ltd.*, 540 U.S. 736, 744 (2004) (a federal agency's amenability to suit does not establish liability where the underlying statute does not reach that entity). Thus, although §§ 106(b) and (c) may permit counterclaims or setoffs against a governmental unit, they do not authorize recovery absent an independent substantive basis. Felton's FDCPA and Mississippi Code § 89-5-21 claims fall outside the provisions enumerated in § 106(a) and may proceed under § 106(b) only if those statutes themselves create a cause of action that can be asserted against the United States.

**B.      Contempt for Violations of the Agreed Order and the Discharge Injunction under 11 U.S.C. § 524(a)(2).**

Felton contends that the USDA violated both the Agreed Order declaring her mortgage debt satisfied and the Discharge Order by failing to release its lien and by treating the discharged debt as still owed, including by threatening to garnish her Social Security benefits. The USDA does not dispute that it failed to release the lien within a reasonable time or that it maintained an erroneous balance and referred the account to the Treasury for potential collection.

Bankruptcy courts possess authority under § 105(a) to enforce their orders through civil contempt. *Highland Cap.*, 98 F.4th at 174. Because the Bankruptcy Code provides no independent damages remedy for violations of the discharge injunction, courts routinely rely on   § 105(a) to enforce § 524(a)(2). *Taggart*, 587 U.S. at 558; 4 COLLIER ON BANKRUPTCY ¶ 524.02 (16th ed. 2025) ("Civil contempt, imposed under the court's section 105 powers, is the normal sanction for violations of the discharge injunction.").

In the Fifth Circuit, civil contempt requires clear and convincing evidence that: (1) a court order was in effect; (2) the order required certain conduct by the contemnor; and (3) the contemnor failed to comply. *Petroleos Mexicanos v. Crawford Enters., Inc.*, 826 F.2d 392, 400 (5th Cir. 1987). Willfulness is not required. *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000). For discharge violations specifically, contempt turns on whether the creditor had an objectively reasonable basis to believe its conduct was lawful. *Taggart*, 587 U.S. at 558.

Here, the record demonstrates that Felton paid the mortgage in full through her Chapter 13 plan, and on October 6, 2023, an Agreed Order was entered requiring the USDA to release its lien. The USDA admits it did not comply with that directive for approximately 18 months. The elements of civil contempt are therefore readily met. A discharge order was also entered on November 14, 2023, and § 524(a)(2) "operates as an injunction" prohibiting any act to collect a discharged debt.

The discharge injunction is intentionally broad and central to a debtor's fresh start. See H.R. Rep. No. 595, 95th Cong., 1st Sess. 363–64 (1978). Treating a discharged debt as still owing, including by maintaining a balance, sending collection communications, or referring an account for collection, violates § 524(a)(2). See *In re McClure*, 420 B.R. 665, 669 (Bankr. N.D. Tex. 2009) (holding that the creditor, by contacting the debtor to collect on a discharged debt and referring that debt to a collection agency, violated the discharge injunction of § 524(a)(2)); *In re Faust*, 270 B.R. 310, 315 (Bankr. M.D. Ga. 1998) (stating a creditor violates §524(a)(2)'s injunction by referring a discharged debt to a collection agency).

The USDA violated § 524(a)(2) by carrying an erroneous balance for roughly 18 months after discharge and by referring the account to the Treasury, which in turn issued a warning of impending garnishment. The USDA was aware of the Agreed Order, which it signed, and it received notice of the discharge order via first-class mail and ECF transmission. Despite this knowledge, the USDA continued to reflect a balance exceeding $4,000 on Felton's account for at least eight months post-discharge and engaged in repeated conduct consistent with an attempt to collect that nonexistent balance. It contacted Felton directly regarding payment and allowed the Treasury to threaten garnishment of her Social Security benefits. Even after receiving a demand letter from Felton's counsel and repeated follow-up communications, the USDA failed for many additional months to take the simple step the Agreed Order required—releasing the lien.

Maintaining an inaccurate balance, referring the account to Treasury, and failing to correct internal servicing records undermined the discharge injunction's fresh-start function and exerted pressure on Felton to pay a discharged debt. Based on these facts, the USDA lacked any objectively reasonable basis to believe its conduct was permissible. *Taggart*, 587 U.S. at 558. The USDA is therefore in contempt of both the Agreed Order and the discharge injunction.

Section 105(a) authorizes the Court to impose civil contempt sanctions. *Matter of Carroll*, 850 F.3d 811, 813 (5th Cir. 2017). But any sanction must qualify as civil, not criminal. *Highland Cap.*, 98 F.4th at 174. Civil sanctions either coerce compliance or compensate the injured party; criminal sanctions punish past conduct and vindicate the Court's authority. *Int'l Union, UMWA v. Bagwell*, 512 U.S. 821, 827–31 (1994). Coercive sanctions are civil "only if the contemnor is afforded an opportunity to purge the contempt by committing an affirmative act." *Id.* at 829; *Am. Airlines*, 228 F.3d at 581. Once a contemnor purges contempt by performing the required act, any remaining sanction must be compensatory and "for the benefit of the complainant." *Bagwell*, 512 U.S. at 827. Further, Congress has expressly excluded punitive damages from the § 106(a) waiver of sovereign immunity. 11 U.S.C. § 106(a)(3). This statutory bar makes the distinction between civil and criminal contempt especially important in cases involving federal agencies. *In re Duby*, 451 B.R. 664, 671 (1st Cir. B.A.P. 2011).

Felton requests actual damages, costs, and attorney's fees incurred in bringing this adversary proceeding, including the $350 reopening fee. She also asks the Court to impose sanctions "in an amount sufficient to deter such conduct" and to award continuing daily sanctions until the USDA released the lien. The USDA argues that Felton's recovery should be limited to reasonable costs and attorney's fees incurred up to April 14, 2025, when the lien was finally released, and its contempt was purged. The USDA further notes Felton's concession that she suffered no actual damages beyond fees and costs and invokes § 106(a)(3)'s prohibition on punitive damages. Given the statutory limits described above, the Court now turns to each category of relief Felton seeks.

*i. Felton is entitled to recover the attorney's fees and costs she reasonably incurred to secure the USDA's compliance and remedy its violations.*

Compensatory damages may be awarded as a sanction for civil contempt. *Bagwell*, 512 U.S. at 831. As part of their contempt authority, bankruptcy courts may award attorney's fees to compensate a party who necessarily incurred expenses to secure compliance with a court order or injunction. *Highland Cap.*, 98 F.4th at 176-77. But any such award must be limited to fees and costs incurred *because of* the contemnor's misconduct. *Id.* at 175. (citing *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 109 (2017)) (emphasis added). Fees lacking this causal connection become punitive, exceed the court's civil contempt authority, and fall outside the narrow waiver of sovereign immunity. *Id.* Thus, if the aggrieved party would have incurred certain fees regardless of the misconduct, those amounts cannot be treated as compensatory and may not be awarded. Section 106(a)(3) reinforces this limitation by expressly prohibiting punitive damages against the United States. Accordingly, the Court must confine any award to the fees and costs Felton reasonably incurred to obtain the USDA's compliance and to remedy the USDA's violation of this Court's orders and the discharge injunction.

The USDA concedes that Felton is entitled to recover the actual costs and attorney's fees she incurred in bringing this litigation to secure the USDA's compliance with this Court's Orders, at least through April 14, 2025 (i.e., the date the executed Deed of Release was recorded, and the USDA's contempt was purged). Civil contempt is purged when the contemnor performs the affirmative act required to comply with the Court's order, and neither party disputes that the USDA satisfied that obligation when the lien release was recorded. Although the purge date marks the point at which coercive sanctions are no longer appropriate, it does not operate as a bright-line cut-off for compensatory fees, as the USDA suggests. Under the *Goodyear* causation framework, Felton is entitled to recover all fees and expenses causally tied to the USDA's contempt, including

reasonable fees incurred after April 14, 2025, so long as they were necessary to obtain relief from the violation, such as confirming compliance, ensuring correction of the account balance, addressing lingering effects, or attempting to resolve the matter without further litigation.

In determining the amount of compensatory attorney's fees recoverable for the USDA's contempt, the Court must identify those fees Felton incurred because of the USDA's misconduct and that were reasonably necessary to secure compliance with this Court's Orders and remedy the resulting violations. *Highland Cap.*, 98 F.4th at 176-77. This causation requirement excludes fees that are duplicative, unrelated to obtaining compliance, or incurred primarily in pursuit of punitive sanctions or nonviable statutory claims, as such fees are not remedial and would exceed the Court's civil-contempt authority. See *Goodyear*, 581 U.S. at 108-09. Section 106(a)(3) reinforces this limitation by prohibiting punitive damages against the United States and requiring that any fee award be consistent with the EAJA. Thus, Felton's recovery must be confined to fees incurred for the limited purpose of securing the USDA's eventual compliance and addressing the consequences of its misconduct.

The Court agrees that the USDA purged its contempt on April 14, 2025, when the fully executed lien release was recorded. The purge date marks the point at which coercive sanctions are no longer permissible, but it does not operate as a bright-line cutoff for compensatory fees. Fees incurred after April 14, 2025 may still be recoverable if they were reasonably necessary to confirm the USDA's compliance, ensure correction of the outstanding account balance, address lingering effects of the contempt, or secure the compensatory relief to which Felton is legally entitled. However, fees incurred primarily to pursue punitive sanctions or statutory damages unavailable against the United States are not compensable, as they do not remedy any harm caused

by the USDA's misconduct and would impermissibly function as a punitive award barred by §
106(a)(3).

Applying these principles, the Court allows all pre-April 14, 2025 fees that were reasonably
necessary to identify the USDA's noncompliance, communicate with the USDA and the Trustee
regarding the erroneous account balance, seek release of the lien, and prepare filings required to
obtain the USDA's compliance. The Court disallows the January 3, 2025 entry for 2.5 hours spent
revising and filing the adversary complaint. No amended complaint was ever filed in this adversary
proceeding, and the complaint attached as an exhibit to the Motion to Reopen is identical to the
complaint ultimately filed on January 3, 2025. Accordingly, the January 3, 2025 entry for 2.5 hours
spent revising and filing the adversary complaint reflects work that was duplicative and not
necessary to secure compliance and is therefore disallowed. Based on the limited factual record
before the Court, all other pre-April 14, 2025 entries, while some appear administrative in nature,
are nominal and therefore allowed. The Court therefore finds that all hours billed from March 21,
2024 through April 14, 2025, less the duplicative entry on January 3, 2025—totaling 19.5 hours—
were reasonably necessary to secure the USDA's compliance as required under the *Goodyear*
framework and, thus, allowed.

With respect to post-April 14, 2025 work, the Court allows only those entries that reflect
efforts to confirm the accuracy of the USDA's compliance, finalize fee submissions, or respond to
USDA objections directly related to Felton's compensatory entitlement. The record provides little
clarity as to the parties' course of dealings and the point at which Felton began pursuing only
punitive sanctions or statutory damages unavailable against the USDA. The sole clear indication
in the record is Felton's admission at the September 5, 2025 status hearing that she had not suffered,
and was not seeking, actual compensatory damages aside from her attorney's fees and expenses.

Under these circumstances, and based on the record before it, the Court will allow all post-April 14, 2025 entries through and including September 5, 2025, totaling eight (8) hours. Fees incurred after the September 5, 2025 hearing relate to issues other than determining and securing the appropriate compensatory relief which Felton is entitled to for the USDA's contempt. Therefore, all hours billed after September 5, 2025 were not reasonably necessary to secure the USDA's compliance and, thus, are disallowed. Based on the Courts review of the total hours billed by Felton's counsel, the Court finds that 26.7 of the hours billed are compensable as they reflect the amount of work reasonably necessary to secure the USDA's compliance.

Felton also seeks compensation for three hours of work performed by her counsel's paralegal at an hourly rate of $65.00. The USDA does not challenge the reasonableness of the paralegal rate, or the number of hours billed. The Court therefore finds that the three hours of paralegal work billed at an hourly rate of $65.00 are reasonable and compensable.

Because § 106(a)(3) requires that fee awards against the federal government be "consistent with" the provisions of 28 U.S.C. § 2412(d)(2)(A), the Court must determine the appropriate hourly rate to award under that provision of the EAJA. In her Fee Application, Felton contends that she is entitled to attorney's fees in the amount of $8,019.50, based on an hourly rate of $265.00 for all work performed in 2024 and 2025. The USDA argues that the requested attorney hourly rate of $265.00 is not consistent with EAJA as required under § 106(a)(3) and should be reduced. The Court agrees with the USDA that Felton's counsel's requested hourly rate must be reduced to comply with EAJA as required under § 106(a).

The provision of EAJA at issue, 28 U.S.C. § 2412(d)(2)(A), provides that "attorney's fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor. . . justifies a higher fee." In the Fifth Circuit, cost of living

adjustments under EAJA are made to reflect the cost of living for the year that the legal services are rendered. *Perales v. Casilas*, 950 F.2d 1066, 1079 (5th Cir. 2010). To calculate these adjustments, the $125.00 hourly rate is multiplied by the annual Consumer Price Index (the "CPI-U") for the Southern Region, then divided by the CPI-U Southern Region Index for March 1996. *Smith v. Comm'r of Soc. Sec. Admin.*, 2016 WL 3645192 at *1 (N.D. Miss. June 30, 2016). Because the work in this case occurred between 2024 and the first half of 2025, the reasonable rates should be determined using the CPI-U Sothern Region in 2024 for the work performed in 2024 and the 2025 Southern Region First-Half CPI-U for the work performed in 2025. Thus, the permissible fee amount for services performed by Felton's counsel in 2024 is $250.32 (125.00 multiplied by the 2024 CPI-U Southern Region Index [305.187] then divided by CPI-U Index for March 1996 [152.4]). The permissible fee amount for services performed in 2025 is $254.81 (125.00 multiplied by the 2025 First Half CPI-U Index [310.669] divided by CPI-U Index for March 1996 [152.4]).

Finally, because EAJA defines an award of fees to include "reasonable attorney's fees," the Court will apply the lodestar method to determine the reasonableness of Felton's fee award. *CRG Partners Group, L.L.C. v. Neary (In re Pilgrim's Pride Corp.)*, 690 F.3d 650, 655 (5th Cir. 2012). To calculate the lodestar, the Court must multiply the compensable hours billed by a reasonable hourly rate for such services. *In re On-Site Fuel Service, Inc.*, 627 B.R. 644, 657 (Bankr. S.D. Miss. 2021). Once the Court arrives at the lodestar amount, it may adjust that amount either up or down based on the twelve factors laid out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). The *Johnson* factors are as follows:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability

of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Given the above reasonable rates and hours, the Court finds the lodestar amount is $6,794.68. To arrive at this amount, the Court first determined the total amount of reasonably compensable hours billed during 2024, which amounts to 13.3 hours. Multiplying those 13.3 hours of compensable time by the $250.32 permissible rate for work performed in 2024 under EAJA, the Court finds that $3,329.26 represents the total amount of compensable fees for work performed during 2024. The Court then determined that 13.6 hours reflect the total amount of compensable hours billed during 2025. Multiplying those 13.6 hours of compensable time by the $254.81 permissible rate, the Court finds that $3,465.42 represents the total amount of compensable fees for work performed in 2025. The total amount of compensable fees for 2024 combined with those for 2025 total $6,794.68.  While the Court may adjust this lodestar based upon the *Johnson* factors, the Court concludes, after careful evaluation of those factors, that no adjustment of the lodestar is warranted. Therefore, the Court finds that $6,794.68 reflects the reasonable amount of attorney's fees recoverable by Felton in this case.

Felton additionally requests the recovery of $195.00 to reflect the three hours of paralegal work performed at a $65.00 hourly rate. As discussed previously, the Court finds that paralegal rate reasonable and, thus, the $195.00 fee in connection with it to be compensable. Further, the USDA concedes in its Objection to the Fee Itemization, that Felton is entitled to recover the total costs incurred for mailing ($50.28) and the filing fee ($350.00) that Felton was required to pay to reopen her bankruptcy case. Considering that the filing fee was clearly necessary to finally get the USDA to comply with this Court's Orders and the discharge injunction, the Court finds the $350.00 to be compensable along with the $50.28 in mailing costs the USDA concedes Felton is entitled

to. Finally, while the USDA has not directly addressed Felton's request for $49.50 in office copy costs, the Court concludes such request reasonable and allowed. Accordingly, the Court finds that Felton is entitled to recover the sum of $644.78 in expenses in addition to the $6,794,68 award of compensable attorney's fees.

After applying those rate caps and excluding non-compensable entries as described above, the Court finds that Felton is entitled to a compensatory award in the total amount of $7,439.46, representing the reasonable attorney's fees and costs necessarily incurred to secure the USDA's compliance and remedy its contempt.

### ii. Felton's request for prospective coercive civil contempt sanctions and punitive sanctions cannot be granted.

As discussed above, prospective coercive civil contempt sanctions, such as daily fines, become moot once the contemnor purges the contempt, because such sanctions serve only to compel compliance, not to punish past conduct. *Bagwell*, 512 U.S. at 827; *Duby*, 451 B.R. at 678. Here, the USDA purged its contempt on April 14, 2025 when it recorded the lien release. Because compliance has been achieved, no coercive sanction can serve its intended remedial function, and any continuing per diem sanction would be impermissible.

Punitive sanctions fare no better. Section 106(a)(3) expressly prohibits punitive damages against governmental units, even in proceedings otherwise authorized under § 106(a)'s waiver of sovereign immunity. See 11 U.S.C. § 106(a)(3) (" . . . but not including an award of punitive damages."). Courts addressing discharge violations by federal agencies routinely hold that sanctions imposed after the offending conduct has ceased, and without an opportunity for the contemnor to purge, are punitive in nature and therefore barred. *Duby*, 451 B.R. at 678. That conclusion aligns with § 106(a)(3)'s prohibition on punitive damages and the Supreme Court's

requirement that any civil contempt sanction imposed after compliance must be "remedial and for the benefit of the complainant." *Bagwell*, 512 U.S. at 827.

Sanctions imposed merely to deter future misconduct or punish past violations are criminal in character and beyond the scope of the bankruptcy court's civil contempt authority. See, e.g., *Bagwell*, 512 U.S. at 829; *American Airlines, Inc.*, 228 F.3d at 581–82 (holding sanctions lacking a purge mechanism are punitive); and *M.D. ex rel. Stukenberg v. Abbott*, 119 F.4th 373, 384 (5th Cir. 2024). Because Felton seeks both continuing daily sanctions and sanctions designed "to deter" the USDA, both forms of relief are punitive and cannot be awarded.

Felton seeks "continuing daily sanctions until USDA releases the Deed of Trust" and additional sanctions "in an amount sufficient to deter such conduct." The USDA complied with this Court's Orders on April 14, 2025, when it executed the lien release that Felton's counsel recorded in the Bolivar County land records. The USDA's violation of both the Agreed Order and the discharge injunction therefore ceased on that date, when it undertook the affirmative act required to purge its contempt. Because the USDA has complied, Felton's request for continuing daily sanctions is moot. Such sanctions are coercive in nature and are available only while a contemnor remains out of compliance. Once contempt is purged, coercive sanctions serve no remedial purpose and cannot be imposed.

Felton's request for sanctions "in an amount sufficient to deter such conduct" is equally unavailing. The purpose of that sanction, as framed, is punitive: to deter or punish past noncompliance and to vindicate the Court's authority. Punitive sanctions fall outside the scope of the bankruptcy court's civil contempt power and are expressly barred by § 106(a)(3), which prohibits an award of punitive damages against a governmental unit notwithstanding the waiver of immunity under § 106(a)(1). Felton has identified no uncompensated damages beyond the

attorney's fees and costs she reasonably incurred to secure the USDA's compliance, which the Court has already held are recoverable as compensatory relief. Any additional sanction aimed merely at deterrence or punishment would constitute an impermissible criminal contempt penalty. Accordingly, because the USDA has purged its contempt and because § 106(a)(3) precludes punitive sanctions against the United States, Felton's requests for ongoing daily fines and sanctions "in an amount sufficient to deter such conduct" must be denied.

## C. Federal and State Non-Bankruptcy Claims

As discussed above, § 106 does not expand governmental liability beyond what applicable non-bankruptcy law independently allows. This principle governs Felton's remaining claims under the FDCPA and Mississippi Code § 89-5-21. Felton argues that these claims satisfy § 106(b)'s procedural requirements because: (1) the USDA filed a proof of claim in her bankruptcy case; (2) her claims arise out of the same transaction or occurrence, the mortgage debt and the lien securing it; and (3) any recovery would constitute property of the bankruptcy estate.[9] See n.8. The USDA does not dispute that Felton may satisfy these threshold elements.

The USDA argues, however, that § 106(b) does not itself create a substantive right to recover damages. The Court agrees. As explained, § 106(b) is procedural in that it waives sovereign

---

[9] Although not directly in dispute, the Court notes that Felton's FDCPA and Mississippi Code § 89-5-21 claims likely satisfy § 106(b)'s compulsory-counterclaim requirements. Under § 106(b), a governmental unit waives sovereign immunity when: (1) it files a proof of claim; (2) the debtor asserts a claim arising from the same transaction or occurrence; and (3) the claim constitutes property of the estate. *In re City Wide Cmty. Dev. Corp.*, 66 B.R. 320, 327 (Bankr. N.D. Tex. 2025) (citing *Yahweh Ctr., Inc. v. U.S. Dep't of Educ.*, 27 F.4th 960, 966 (4th Cir. 2022)). Courts apply the "same transaction or occurrence" test consistent with Federal Rule of Civil Procedure 13(a). *Id.* A counterclaim is compulsory when there is a logical relationship between the claims, when they share common issues of fact or law, when res judicata would bar later litigation, or when substantially the same evidence supports both claims. Satisfaction of any one of these factors is sufficient. *Id.* In addition, "property of the estate" is broadly defined under § 541 to include "all legal or equitable interests of the debtor" in property as of the commencement of the bankruptcy case, including legal claims.

immunity only for jurisdictional purposes and only when the statutory elements are met. It does not supply a cause of action or expand the government's liability where the underlying statute does not independently authorize suit against the United States. Because neither the FDCPA nor Mississippi Code § 89-5-21 provides a substantive basis for liability against the USDA, § 106(b)'s limited waiver does not allow Felton to recover damages under either statute.

*i. Felton's claim for damages under the FDCPA is barred by sovereign immunity.*

Felton seeks statutory damages of $1,000, actual damages, and attorney's fees under the FDCPA alleging that the USDA violated the statute by failing to release its lien and by threatening to garnish her Social Security benefits. The USDA argues that sovereign immunity bars any FDCPA claim against a federal agency. The Court agrees.

It is well established that the United States may not be sued absent a waiver of sovereign immunity that is "unequivocally expressed in statutory text." *Wagstaff v. U.S. Dep't of Educ.*, 509 F.3d 661, 664 (5th Cir. 2007). In *Wagstaff*, the Fifth Circuit held that the FDCPA contains no express waiver of sovereign immunity and therefore does not authorize suits against the Department of Education or any other federal agency. *Id.* at 665.[10] This conclusion follows directly from the statute's definitional structure in that the FDCPA expressly excludes federal officers and employees from the definition of "debt collector" when they are acting in the performance of their official duties. 15 U.S.C. § 1692(a)(6)(C). Congress's decision to exempt federal officials and to omit any waiver of immunity forecloses any FDCPA liability against the United States.

Section 106(b) does not change this outcome. As discussed above, § 106(b) is purely jurisdictional. It permits certain counterclaims to be heard but does not create substantive rights or

---

[10] See also *United States v. Fritz*, 608 F. App'x 259, 261 (5th Cir. 2015) (per curiam) (holding that the federal government cannot act as a "debt collector" for FDCPA purposes because federal officers and employees are expressly excluded from the statute's definition).

override the liability limits imposed by non-bankruptcy law. *Supreme Beef*, 468 F.3d at 256–60. Where, as here, the FDCPA itself provides no cause of action against a federal agency, § 106(b) cannot supply one. Accordingly, Felton's FDCPA claim cannot proceed. It bears noting that the proper vehicle for addressing prohibited post-discharge collection conduct by a governmental unit is civil contempt under § 105 for violation of the discharge injunction, which is precisely the theory under which this Court has already granted Felton compensatory relief. The FDCPA does not furnish an additional or alternative remedy against the USDA.

   *ii. Felton's claim for recovery under Mississippi Code § 89-5-21 is also barred by sovereign immunity.*

   Felton also seeks statutory damages under Mississippi Code § 89-5-21, which imposes liability on a mortgagee that fails to cancel a mortgage or deed of trust after the underlying debt has been satisfied. Miss. Code Ann. § 89-5-21(2). At the September 5, 2025 status hearing, Felton conceded that she suffered no actual damages from the USDA's noncompliance and seeks only the statute's $200 penalty.

   The authority to waive sovereign immunity for the United States and its agencies rests exclusively with Congress. *Hercules, Inc.*, 516 U.S. at 423; *Flamingo Indus. (USA) Ltd.*, 540 U.S. at 744; *Miller*, 604 U.S. at 527. A federal agency such as the USDA is immune from suit unless Congress has unequivocally expressed its consent to be sued in the text of a federal statute. *Miller*, 604 U.S. at 528. State legislation cannot waive or diminish federal sovereign immunity. Because Mississippi is a separate sovereign, a state statute such as Mississippi Code § 89-5-21 cannot, under the Supremacy Clause, impose liability on the United States or its agencies absent an express congressional waiver.

   Not only do these constitutional limits foreclose Felton's claim, but Mississippi Code § 89-5-21 itself contains no reference to the United States, no language purporting to apply to federal

entities, and no waiver of sovereign immunity. The subsection Felton relies upon, § 89-5-21(2), states that "any such mortgagee . . . who does not, after payment of all sums owed, within one (1) month of written request, cancel on the record the mortgage or deed of trust shall forfeit the sum of Two Hundred Dollars ($200.00)" to the mortgagor. Mississippi courts have long held that this $200 forfeiture is a penalty, not compensatory damages. See *Dawkins v. Federal Land Bank of New Orleans*, 155 So. 166 (Miss. 1934); *Johnson v. Ferguson*, 121 So. 485 (Miss. 1929); and *Brown v. Yarbrough*, 94 So. 887 (Miss. 1923). Courts are especially strict in refusing to impose state-law penalties on the United States absent an unmistakable congressional waiver, which does not exist here. See *Miller*, 604 U.S. at 538.

Section 106(b) does not alter this result. As explained above, § 106(b) is purely jurisdictional: it allows certain counterclaims to be heard but does not create substantive liability or authorize the imposition of state-law penalties against the federal government. *Supreme Beef*, 468 F.3d at 256–60. Because the USDA could invoke sovereign immunity to defeat a Mississippi Code § 89-5-21 claim outside bankruptcy, the statute cannot be invoked through § 106(b) to impose liability within bankruptcy. The Bankruptcy Code does not expand the substantive obligations of federal agencies under state law.

Accordingly, because Mississippi Code § 89-5-21 provides no substantive basis for liability against the United States and § 106(b) cannot supply one, Felton's claim for statutory damages under Mississippi Code § 89-5-21 also must be denied.

## IV.  CONCLUSION

For the reasons set forth above, the Court concludes that the USDA violated both the Agreed Order entered on October 6, 2023 and the discharge injunction imposed by § 524(a)(2). The USDA maintained an inaccurate loan balance, referred Felton's discharged account for

collection, and failed for months to release its lien—all without any objectively reasonable basis to believe its conduct was permissible. These actions constitute civil contempt under § 105(a), and Felton is entitled to compensatory relief.

Sovereign immunity, however, strictly limits the scope of that relief. Section 106(a) abrogates immunity only to allow compensatory, non-punitive remedies for violations of the Bankruptcy Code. Section 106(a)(3) expressly bars punitive sanctions against the United States. Because the USDA purged its contempt on April 14, 2025, prospective coercive sanctions and deterrence-based penalties are unavailable. Likewise, Felton's non-bankruptcy statutory claims under the FDCPA and Mississippi Code § 89-5-21 fail as a matter of law. Neither statute waives sovereign immunity, neither creates a cause of action against the United States, and § 106(b) cannot supply a substantive basis for liability where none exists outside bankruptcy.

Thus, Felton's recovery is limited to the attorney's fees and costs she reasonably incurred because of the USDA's contempt and that were necessary to obtain compliance or to remedy its violations. Applying the requirements of § 106(a)(3), the Court evaluates those fees using the EAJA hourly rate caps and excludes entries that are duplicative, unrelated to securing compliance, or tied solely to punitive or nonviable statutory claims. After applying these principles, the Court finds that Felton is entitled to a compensatory award in the amount of $7,439.46, representing the reasonable attorney's fees and costs incurred to secure the USDA's compliance and to remedy the consequences of its violations.

All other requested relief, including statutory damages under the FDCPA and Mississippi Code § 89-5-21, punitive or deterrence-based sanctions, and continuing daily fines, is denied.

It is, therefore **ORDERED** that the *Motion for Damages, Sanctions, and Attorney's Fees* (Dkt. #13) is **GRANTED IN PART** and **DENIED IN PART** consistent with this Memorandum Opinion. A separate final order and judgment will be entered.

##END OF ORDER##